# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| KYLE ZABELNY, | ) | Case No. 2:13-cv-00853-PAL |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | (Mtn to Compel Arb'n or Stay - Dkt. #6) |
| | ) | (Mtn to Use Exhibits - Dkt. #40) |
| CASHCALL, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The court held a hearing on August 15, 2013, on Defendant's Motion to Compel Arbitration and Dismiss or, Alternatively, Stay Action; Declaration of Esra Acikalin Hudson in Support Thereof (Dkt. #6). Plaintiff also filed a Motion for Permission to Use Demonstrative Exhibits (Dkt. #40). After the hearing, both sides filed supplemental papers addressing recent Supreme Court and Ninth Circuit cases decided while this matter has been under submission. The court has considered the Motion and the Declaration, Plaintiff's Response (Dkt. #20); Defendant's Reply (Dkt. #22); Defendant's Notice of New Authority (Dkt. #24); Plaintiff's Sur-Reply and Opposition (Dkt. #31); Plaintiff's Supplement to Sur-Reply (Dkt. #32); Defendant's Response to Plaintiff's Sur-Reply (Dkt. #37); Defendant's Notice of New Authority (Dkt. #42); and the arguments of counsel at the hearing. The parties consented to magistrate judge jurisdiction, and the district judge referred this case to the undersigned to conduct all proceedings and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 . *See* Notice of Consent (Dkt. #25), and Order (Dkt. #26).

While this matter has been under submission, the Ninth Circuit has decided a number of cases construing the Federal Arbitration Act. For the reasons explained below, the court concludes that Zabelny has not met his burden of showing that in enacting the FLSA,  NLRA, or the Norris-LaGuardia

Acts Congress intended to preclude arbitration of claims brought under the FLSA. The court also finds that the arbitration agreement at issue is valid and enforceable, and will therefore grant Defendant's Motion to Compel Arbitration, and dismiss this action requiring the parties to arbitrate their disputes.

**BACKGROUND**

The Complaint in this case was filed in state court and removed (Dkt. #1). It is a lawsuit arising under the Fair Labor Standards Act ("FLSA"). Plaintiff seeks to recover unpaid overtime wages on behalf of himself and other similarly situated employees of the Defendant. Mr. Zabelny alleges he was employed as a loan agent in Defendant's production department beginning December 2012. Complaint (Dkt. #1) ¶¶ 3, 4. He and other loan agents were paid semi-monthly and eligible for up to ten hours of overtime pay each week. *Id.*, ¶¶ 7, 8. Defendant prohibited loan agents from working in excess of ten hours of overtime in any given week. *Id.*, ¶ 9. However, Defendant's actual policy was to require loan agents to work in excess of fifty hours per week, because their hourly rate of pay was based on production. *Id.*, ¶¶ 10, 11. Defendant's policy created incentive for loan agents to work in excess of forty hours per week, and employees were terminated for insufficient production. *Id.*, ¶ 13. Loan agents who worked more than fifty hours per week were not paid for this additional time. *Id.*, ¶ 14.

Loan agents were expected to clock out for lunch, but were also expected to work through lunch and were not compensated for time worked during meal and rest periods. Zabelny worked holidays, but was not compensated for this time. *Id.*, ¶¶ 18, 19. Zabelny was terminated January 30, 2013, for unsatisfactory performance–that is, low production. *Id.*, ¶ 20. He was terminated in retaliation for internal complaints regarding Defendant's overtime practice. *Id.*, ¶ 20. On average, Zabelny worked sixty to eighty hours per week at the rate of $11/hr. *Id.,* ¶ 21. When averaged over the period of time he worked, Zabelny earned less than 1.5 times of the daily minimum overtime requirement. *Id.* ¶ 22. The complaint asserts claims for: (1) violation of the FLSA overtime wage provisions; (2) a state claim for violation of Nevada wage and hour laws; and (3) retaliation in violation of the FLSA.

**A.      Defendant's Motion to Compel.**

Defendant CashCall, Inc. ("CashCall") seeks to compel the Plaintiff to arbitrate his disputes in compliance with an employee acknowledgment form he signed on December 10, 2012, when he began working as a loan agent. The employee acknowledgment form contains an arbitration provision

2

requiring arbitration of "any dispute or controversy arising out of, relating to, or concerning" his

employment to be conducted in accordance with the employment dispute resolution rules in effect with

JAMS.  Counsel for CashCall sent counsel for Plaintiff a letter demanding that the parties arbitrate their

disputes after receiving a copy of the complaint.  However, Plaintiff refused to arbitrate.

Defendant argues that the parties' arbitration agreement is governed by the Federal Arbitration

Act ("FAA").  It contains a California choice-of-law provision.  This action was filed in Nevada, and

under these circumstances, Nevada choice-of-law rules apply to determine which laws govern the

enforceability of the of the arbitration agreement.  Under Nevada choice-of-law rules, the parties'

choice of California law applies to the enforceability of the arbitration agreement to the extent that

California law is not inconsistent with the FAA.  Nevada choice-of-law rules apply because this is a

federal question action in which the court is exercising supplemental jurisdiction over state law claims.

In this situation, the federal court applies the choice-of-law rules of the forum state.  However, FAA

procedural law applies and preempts any contrary state law.  The parties' arbitration agreement

expressly provides that the agreement will be governed by the laws of the state of California.  Under

Nevada choice-of-law rules, the parties' choice-of-law provisions are enforceable if the chosen

jurisdiction has a substantial relationship to the transaction, and the agreement is not contrary to the

public policy of the forum.  Both conditions apply in this case.  Defendant is headquartered in

California, and therefore, California has a substantial relationship to the arbitration agreement.

Additionally, Nevada recognizes a strong public policy in favor of arbitration and there is no Nevada

public policy inconsistent with enforcing the arbitration agreement.

CashCall contends the arbitration agreement is also enforceable under California contract law.

California law also has a strong public policy in favor of arbitrating disputes.  The party opposing

arbitration has the burden of proving, by a preponderance of the evidence, that an arbitration clause

cannot be interpreted to require arbitration.  Citing *Armendariz v. Foundation Health Site Care

Services, Inc.*, P.3d 669 (Cal. 2000), CashCall argues that when an arbitration agreement requires

arbitration of non-waiveable statutory rights in the employment context, the arbitration agreement must

contain five minimum requirements: (1) a neutral arbitrator; (2) adequate discovery; (3) all applicable

statutory remedies otherwise available in court; (4) a written arbitration award that permits limited

1    judicial review; and (5) limits on arbitration costs and fees chargeable to the employee.  The parties'

2    arbitration agreement satisfies all of these requirements.  It adopts JAMS Employment Rules &

3    Procedures which provide for appointment of a neutral arbitrator, authorize adequate discovery,

4    authorize the arbitrator to award all legal and equitable remedies otherwise available in court, require a

5    written arbitration award, and require CashCall to pay all costs of the arbitration except for the initial

6    JAMS case management fee.  Thus, the court should dismiss this case and compel Zabelny to arbitrate

7    his claims on an individual basis in Orange County, California.

8            **B.      Plaintiff's Response**.

9            Zabelny opposes the motion arguing the parties' agreement to arbitrate is procedurally and

10   substantively unconscionable because it violates the FLSA's substantive right to bring a collective

11   action under § 216(b).  Additionally, Zabelny argues the agreement violates the National Labor

12   Relations Act ("NLRA") by prohibiting employees from collectively petitioning their employer for

13   labor purposes.  Both the FLSA and NLRA give employees federal substantive rights to pursue

14   collective actions and collectively petition the employer.  The arbitration agreement in this case

15   purports to waive these rights by prohibiting collective actions which is contrary to public policy.  It is

16   also substantively and procedurally unconscionable under Nevada state law.  Finally, Plaintiff argues

17   the agreement lacks consideration.

18           Plaintiff contends that the text of the FLSA and legislative history establish that a waiver of

19   FLSA rights to collectively vindicate wage and hour rights is prohibited.  Plaintiff maintains that

20   § 216(b) created a substantive right to bring a collective action which cannot be waived by a provision

21   in an arbitration agreement governed by the FAA.  Plaintiff contends that when Congress established its

22   two-tiered approach to conditional certification of an FLSA action, it created a substantive advantage to

23   FLSA claimants to level the playing field with an employer.  FLSA collective actions secure the public

24   policy goals of the FLSA by allowing efficient resolution of common issues of law and fact arising

25   from the same alleged employment policy or practice.  The Defendant in this case has been subject to

26   multiple lawsuits for wage and hour violations and drafted this arbitration agreement to prevent

27   collective actions.  Enforcing the arbitration agreement would deprive Plaintiff and others like him of

28   their substantive rights to collectively petition for wages under the FLSA.  Citing *Gilmer v.*

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991), Plaintiff argues that the FAA does not allow enforcement of employment arbitration clauses that deprive workers of their substantive federal statutory rights under the FLSA and NLRA.

Plaintiff disputes that the Supreme Court's decision in *AT&T Mobility, LLC v. Concepcion*, 131 S.Ct. 1740 (2011) applies to arbitration agreements in the employment context.  Plaintiff contends that the holding in *Concepcion* is limited to consumer contracts.  There, the Supreme Court held that a California state law prohibiting waivers of class actions in an arbitration agreement was preempted by the FAA.  Plaintiff argues that the FAA does not, however, have the same ability to preempt federal FLSA collective action rights which are substantive and non-waiveable.

Plaintiff does not directly address Defendant's choice-of-law arguments.  However, he argues that the arbitration agreement is both procedurally and substantively unconscionable, and therefore, unenforceable under Nevada law for several reasons.  First, the arbitration agreement is procedurally unconscionable under Nevada law because Plaintiff did not learn of the requirement to arbitrate his claims and forego his class rights until after he accepted Defendant's employment offer.  Plaintiff had already accepted employment and was presented with the arbitration agreement without a meaningful opportunity to review its terms and decide whether to waive his FLSA rights as a condition of employment.  Defendant had already been subject to several wage and hour lawsuits when Plaintiff began working, and deprived Plaintiff of the opportunity to investigate material facts about whether Defendant had a history of wage and hour violations before accepting employment.  Plaintiff claims Defendant "wilfully suppressed the fact it would bar Plaintiff the right to collect overtime wages as a collective group in a judicial forum."  Plaintiff argues this amounts to "unequal bargaining power by fraud."

Plaintiff asserts the agreement is also procedurally unconscionable because it only requires employees to arbitrate their claims and does not contain a reciprocal provision requiring the employer to arbitrate.  Plaintiff contends the agreement is substantively unconscionable on its face by requiring a waiver of Plaintiff's right to pursue collective actions and a judicial forum to vindicate collective action rights in violation of state public policy.

/ / /

1   Plaintiff also argues that the arbitration agreement is void because it violates the NLRA and the

2   Norris-LaGuardia Act.  The National Labor Relations Board ("NLRB") recently held in *In re D.R.*

3   *Horton, Inc.,* 357 NLRB No. 184 (Jan. 3, 2012) that an employee's lawsuit seeking a collective action

4   under the FLSA is "concerted action" protected by Section 7 of the NLRA.  It is unlawful for the

5   employer to condition employment on a waiver of employee Section 7 rights.  Defendant's arbitration

6   agreement waives Plaintiff's Section 7 rights to bring an FLSA action and is therefore unenforceable

7   under the savings clause of the FAA, 9 U.S.C. § 2.  The NLRB's determination that collective action

8   waivers violate Section 7 of the NLRA is an interpretation of the NLRA which is entitled to great

9   deference.  Courts may not enforce a contractual provision that violates the NLRA, or any other federal

10  statute.  The NLRB has also found that a collective action ban violates the Norris-LaGuardia Act by

11  depriving employees of a judicial forum to protect the security of their employment and insure that the

12  terms of their employment do not violate their statutory rights.

13       **C. Defendant's Reply.**

14       CashCall replies that courts have consistently rejected Plaintiff's argument that the arbitration

15  agreement deprives employees of non-waiveable, substantive statutory rights afforded by the FLSA and

16  NLRA.  All of the circuit courts of appeal which have addressed the enforceability of FLSA collective

17  action waivers in arbitration agreements have rejected Plaintiff's arguments and enforced arbitration

18  agreements containing provisions similar to the ones at issue in this case.  All California and Nevada

19  district courts to have addressed this issue have similarly ruled.  CashCall maintains that the law is clear

20  that the right to pursue FLSA claims as a collective action is a procedural rather than a substantive right

21  which can be waived.  The overwhelming weight of authority upholds enforcing arbitration agreements

22  with provisions requiring employees to arbitrate their collective action claims on an individual basis.

23  Defendant relies heavily on the Eighth Circuit's recent decision in *Owen v. Bristol Care, Inc*., 702 F.3d

24  1050, 1055 (8th Cir. 2013) to support its arguments that nothing in the FLSA or its legislative history

25  establishes congressional intent to render arbitration agreements containing class or collective action

26  waivers unenforceable.

27       Defendant also argues that Plaintiff has not met his burden of establishing that the arbitration

28  agreement in this case is both procedurally and substantively unconscionable.  Plaintiff's substantive

unconscionability argument is based on the agreement's waiver of collective actions and a judicial

forum.  Assuming *arguendo* that Plaintiff was required to sign the arbitration agreement as a condition

of his employment does not render the arbitration agreement unenforceable because Nevada has never

applied the adhesion contract doctrine to employment cases.  Defendant argues that the arbitration

clause unequivocally requires both the employer and the employee to arbitrate any dispute or

controversy arising out of, relating to, or concerning the employment relationship.  Thus, the arbitration

provision is reciprocal and Plaintiff's argument it lacks mutuality is without merit.

Finally, Defendant claims that Plaintiff's arguments which rely on the NLRB's decision in *D.R.*
*Horton*, have been rejected by all of the circuit courts of appeals and nearly all of the district courts

which have considered them.  The courts which have directly addressed the issue have concluded that

the right to bring an FLSA collective action is a procedural right which may be waived.

## DISCUSSION

## I.    Applicable Law.

### A.    The Federal Arbitration Act.

Congress enacted the FAA, 9 U.S.C. §§ 1-16, to overcome judicial resistance to arbitration.  *See*
*American Express Co. v. Italian Colors Restaurant,* __ U.S. __, 133 S.Ct. 2304, 2308-09 (2013); *AT&T*
*Mobility LLC v. Concepcion,* __U.S. __ 131 S.Ct. 1740, 1745 (2011); *Hall Street Associates, L.L.C. v.*
*Mattel, Inc.,* 552 U.S. 576, 581 (2008).  The FAA reflects an "emphatic federal policy" in favor of

arbitration.  *Marmet Health Care Ctr., Inc. v. Brown*, __ U.S. __, __ 132 S.Ct. 1201, 1203 (2012) (*per*
*curiam*) (citation omitted).  The text of the FAA "reflects the overarching principle that arbitration is a

matter of contract."  *Italian Colors*, *Id.,* at 2309.  Courts must "rigorously enforce" agreements

according to their terms.  *Id*.  Courts must rigorously enforce the terms of arbitration agreements that

specify with whom the parties agreed to arbitrate their dispute, and the rules under which arbitration

will be conducted.  *Id*.,

In general, arbitration provides a forum for resolving disputes more expeditiously and with

greater flexibility than litigation.  *See Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d

987, 998 (9th Cir. 2003).  The FAA was intended to place arbitration agreements on equal footing with

other contracts.  *See Italian Colors,* 133 S.Ct. at 2309; *Rent-A-Center, West, Inc. v. Jackson*, __ U.S. __

(2010), 130 S.Ct. 2772, 2776 (2010).  Under the FAA,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  In enacting this section, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agree to resolve by arbitration." *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984).  Similarly, the national policy favoring arbitration applies to claims asserting a violation of a federal statute unless the FAA's mandate to rigorously enforce arbitration agreements according to their terms has been overridden by Congress.  *Id.*

The Supreme Court has recognized only two limitations on the enforceability of arbitration provisions governed by the FAA.  First, they must be part of a written maritime contract or contract "evidencing a transaction involving commerce." *Id*., at 11.  Second, arbitration clauses may be revoked only upon "grounds as exist at law or in equity for the revocation of any contract." *Id.*  The FAA is based on Congress' authority to enact substantive rules under the Commerce Clause. *Id.*  The FAA is a substantive rule applicable in state and federal courts. *Id.* at 16.  In enacting the FAA, "Congress intended to foreclose state legislative attempts to undercut the enforceability of arbitration agreements." *Id.*  The Supreme Court has also made it clear that an arbitration agreement requiring arbitration of federal statutory claims is enforceable under the FAA. *Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 26, 111 S.Ct. 1647, 1652 (1991).

Plaintiff does not dispute that this case is governed by the FAA.  Rather, he argues the parties' arbitration agreement is unenforceable.

## B.     The Savings Clause.

The last sentence of Section 2 of the FAA authorizes the court to find arbitration agreements unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  Courts have generally referred to this language as the savings clause.  It permits courts to invalidate arbitration agreements using "generally applicable contract defenses, such as fraud, duress, or

unconscionability." *Conception,* 131 S. Ct. at 1746 (citing *Doctors Associates, Inc. v. Casarotto* 517 U.S. at 681, 687 (1996)).

The savings clause preserves generally applicable contract defenses, but not those that only apply to arbitration agreements. *Id.,* The Supremacy Clause of the United States Constitution preempts state laws that require a judicial forum. *Id.,* at 1158. State law rules that prohibit arbitration of a particular type of claim are preempted by the FAA. *Id.* at 1747. State rules that are inconsistent with the FAA are also preempted. *Id.* at 1747–48. Additionally, state rules that stand as an obstacle to the accomplishment of the FAA's goals are preempted. *Id.,* at 1153. *See, also Preston v. Ferrer,* 552 U.S. 346 (2008). In *Preston,* the Supreme Court found that a state law requiring exhaustion of administrative remedies was preempted by the FAA because it frustrated a primary purpose of the FAA--achieving streamlined proceedings and expeditious results. *Id.* at 359. The Supreme Court has also held that rules that have a disproportionate impact on arbitration are preempted by the FAA. *Concepcion,* 131 S.Ct. at 1747. In essence, the savings clause may not be applied in a manner that disfavors arbitration. *Id.,* State rules that find arbitration agreements unconscionable because they do not abide by the Federal Rules of Evidence, or disallow jury trials, or require judicially monitored discovery, have a disproportionate impact on arbitration, and are therefore preempted by the FAA. *Id*.

In *Concepcion,* the Supreme Court held that California's *Discover Bank* rule, which allowed any party to a consumer contract of adhesion to demand class wide arbitration, was preempted by the FAA. 131 S.Ct. at 1750. Although California's *Discover Bank* rule applied to all contracts, not only arbitration agreements, the Supreme Court held the rule interfered with arbitration and allowed a party to demand class wide arbitration, even where the arbitration agreement was silent on the issue. The high Court found the *Discover Bank* rule was inconsistent with the FAA for several reasons. First, requiring class arbitration rather than bilateral arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1751. Second, class arbitration *requires* more procedural formality. *Id.* (emphasis in original). Third, class arbitration greatly increases risks to defendants. *Id.* at 1751. In short, the Supreme Court held that a state law which conditions enforcement of arbitration on the

/ / /

availability of a class action procedure interferes with the fundamental attributes of arbitration and is preempted by the FAA. *Id*., at 1748.

In a case decided while this case was under submission, the Ninth Circuit applied *Concepcion* and *Italian Colors* to a case brought by former students of a for-profit college as a putative class action reversing the district court and compelling arbitration. It held that the FAA preempted California's *Broughton-Cruz* rule that precluded arbitration of claims for public injunctive relief. *Ferguson v. Corinthian Colleges, Inc*., __ F.3d __, 2013 WL 5779514 (9th Cir. October 28, 2013). It found its earlier decision in *Davis v. O'Melveny & Myers*, 485 F.3d 1066, (9th Cir. 2002), holding otherwise, was "clearly irreconcilable with intervening Supreme Court authority and . . . overruled." *Id*., at *8.

## C.    The Parties' Arbitration Agreement.

The employee acknowledgment form containing the arbitration clause in dispute is attached as Exhibit "B" to CashCall's motion.  The document is entitled "**CASHCALL, INC. EMPLOYEE ACKNOWLEDGEMENT FORM**".  The first sentence below the title provides that the employee agrees to the provisions which follow "[a]s a condition of my employment . . . and in consideration of my employment . . . and my receipt of the wages and other compensation paid to me . . . ."  The first paragraph of the acknowledgment form indicates the employee is acknowledging that he or she is an at-will employee.  The second paragraph contains provisions requiring the employee to keep company information confidential.  The third paragraph is the arbitration provision which provides,

> **Arbitration**.  I agree that any dispute or controversy arising out of, relating to, or cr concerning my employment shall be settled by arbitration to be held in Orange County, California, in accordance with the employment dispute resolution rules then in effect with JAMS.  This includes any claim held or asserted by me or any claim held or asserted by CashCall against me.  The arbitrator may grant injunctions or other relief in such dispute or controversy.  The decision of the arbitrator shall be final, conclusive and binding on the parties to the arbitration.  Judgment may be entered on the arbitrator's decision in any court having jurisdiction.  The Company will pay for all of the costs and expenses of such arbitration.

The arbitration provision contains express language that the employee understands the clause, waives the right to jury trial, and relates to all aspects of the employer/employee relationship.  Specifically, the arbitration clause provides that all claims for wrongful termination, breach of contract, emotional distress, wage and hour claims and any claims for violation of any federal, state or local

/ / /

10

statute, as well as any claims arising out of any laws and regulations relating to employment or employment discrimination must be arbitrated.

Paragraph 3(iii) lists claims involving violation of specific state and federal acts requiring arbitration, including the FLSA.  In bold and in capital letters below the description of the claims that are required to be arbitrated is the following:

> **I UNDERSTAND AND AGREE THAT ALL DISPUTES INCLUDING ANY CLASS OR REPRESENTATIVE CLAIMS I MAY HAVE . . . SHALL BE RESOLVED BY BINDING ARBITRATION ONLY ON AN INDIVIDUAL BASIS. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW ME TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION.**

The final paragraph of the arbitration provision of the employment acknowledgment form contains consideration language indicating that each party's promise to resolve claims by arbitration is consideration for the other party's like promise, and that the employee has been offered continued employment with the company in consideration for his or her promise to arbitrate claims.

The last paragraph of the acknowledgment form is entitled "**General Provisions**" and contains a California governing law provision and consent to personal jurisdiction.  As indicated, Plaintiff does not address Defendant's arguments that California state law applies to this dispute because the parties designated California law as the governing law.  However, during oral argument, counsel for Plaintiff acknowledged that the Nevada Supreme Court has adopted and followed the California Supreme Court's unconscionability analysis from *Armendariz v. Foundation Health Psychcare*, 6 P.3d 669 (Cal. 2000).  Both sides acknowledge that unconscionability is a generally applicable contract defense that may render an agreement to arbitrate unenforceable under both California and Nevada law.

### D.   Choice-of-Law

Although Plaintiff's opposition does not specifically address Defendant's choice-of-law arguments, his unconscionability arguments cite Nevada cases and Nevada public policy.  This is a federal question action in which the court is exercising supplemental jurisdiction over a related state wage and hour claim, and retaliation claim.  In these circumstances, a federal court applies the choice-of-law rules of the forum state, in this case, Nevada. *Paracor Finance v. General Elec. Corp.*, 96 F.3d

1151, 1164 (9th Cir. 1996).  The governing law provision of the parties' arbitration agreement provides the agreement "will be governed by the laws of the State of California."  The Nevada Supreme Court has held that "parties are permitted within broad limits to choose the law that will determine the validity and effect of their contract." *Sievers v. Diversified Mtg. Investors*, 603 P.2d 270, 273 (1979).  The parties' choice-of-law provision is valid if two requirements are met. *Pentex Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995).  First, the situs fixed by the agreement must have a substantial relation with the transaction. *Id*.  Second, the agreement must not be contrary to public policy of the forum. *Id*.  CashCall's headquarters are in Orange County, California which meets the substantial relationship test, and for the reasons discussed below, the agreement is not contrary to the public policy of Nevada.  The court finds both of these requirements are met in this case and that  California law applies in determining whether the parties' arbitration agreement is unconscionable, and therefore unenforceable.

### E.   Unconscionability.

Nevada has adopted the Uniform Arbitration Act and also recognizes that "strong public policy favors arbitration because arbitration generally avoids the higher costs and longer time periods associated with traditional litigation." *D.R. Horton v. Green*, 96 P.3d, 1159, 1162 (Nev. 2002).  Under Nevada law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable.  In *D.R. Horton*, the Nevada Supreme Court relied on the Supreme Court of California's decision in *Armendariz* in its approach to determining whether a contract is unenforceable due to unconscionability.  The Nevada Supreme Court adopted the California Supreme Court's sliding scale approach in determining unconscionability.  Although both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce an unconscionable contract, "they need not be present to the same degree." *Armendariz*, 6 P.3d at 690.  "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice-versa." *D.R. Horton*, 96 P.3d at 1163 (citing *Armendariz*, 6 P.3d at 690 ).

The party opposing arbitration has the burden of showing the arbitration agreement is both procedurally and substantively unconscionable. *Id*. at 1162.  An arbitration clause is procedurally unconscionable under Nevada law when a party lacks a meaningful opportunity to agree to the clause

terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *Id*. Substantive unconscionability "focuses on the one-sidedness of the contract terms." *Id*. at 1162-63. Like the California Supreme Court, the Nevada Supreme Court applies a sliding scale in evaluating whether both procedural and substantive unconscionability invalidate an arbitration clause. Less evidence of substantive unconscionability is required in cases involving great procedural unconscionability. *Id*., at 1162. The reverse is also true. Less evidence of procedural unconscionability is required in cases involving great substantive unconscionability. *Gonski v. Second Judicial District*, 245 P.3d 1164, 1169 (Nev. 2010). ("Although the party seeking to enforce an arbitration clause bears the burden of proving the clause's valid existence, any party opposing arbitration must establish a defense to enforcement.")

Plaintiff primarily relies on arguments the arbitration agreement is unconscionable and therefore unenforceable under the FLSA and NLRA because it contains a collective action waiver. However, Plaintiff also argues the arbitration clause is substantively and procedurally unconscionable under Nevada law. Plaintiff claims the arbitration agreement is procedurally unconscionable because it was not provided to the Plaintiff until after he accepted employment which establishes the parties' unequal bargaining power. Plaintiff also argues that the fact he remained employed after signing the agreement does not render the arbitration agreement enforceable. Plaintiff cites no Nevada or California case supporting the proposition that an arbitration agreement entered into after an employee has accepted employment is procedurally unconscionable, or lacks consideration.

The Nevada Supreme Court has held that an employee's continued employment after a modification of the terms of employment constitutes consideration. *Baldonado v. Wynn Las Vegas, LLC*, 124 Nev. 951, 194 P.3d 96, 105 ("Typically, after an at-will employee is notified of modifications to the terms of his or her employment, the employee remains free to continue employment or to leave. The employee's continued employment constitutes acceptance of, and consideration for, what is essentially a new employment arrangement.") *Id*., at n. 37. Similarly, in *Circuit City Stores*, *Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002), the Ninth Circuit applied California law and held that an employer's "promise to be bound by the arbitration process itself serves as adequate consideration." (citations omitted.).

13

1    Plaintiff's opposition to the motion a claims that the arbitration agreement requires only

2    employees to arbitrate claims and that it is not reciprocal.  However, a plain reading of the arbitration

3    clause provides that the agreement to arbitrate "includes any claim held or asserted by me or any claim

4    held or asserted by CashCall against me."  It also provides that "each party's promise to resolve claims

5    by arbitration . . . is consideration for the other party's like promise."

6    Plaintiff next argues the arbitration agreement is procedurally unconscionable because it is a

7    contract of adhesion.  However, as Defendant correctly points out, the Nevada Supreme Court has never

8    recognized an employment agreement as a contract of adhesion or applied the adhesion contract

9    doctrine to employment cases.  *Kindred v. Second Judicial District*, 996 P.2d 903, 907 (Nev. 2000).

10   There, the Nevada Supreme Court held that claims under Title VII and under the Family Medical Leave

11   Act were arbitrable and rejected Plaintiff's argument that the arbitration clause was invalid as a contract

12   of adhesion.  Under Nevada law, a contract of adhesion is a standardized contract form offered to

13   consumers of goods and services on a take-it-or-leave-it basis without affording the consumer a realistic

14   opportunity to bargain.  *Id* (citations omitted).  The Nevada Supreme Court found the employee's

15   argument the arbitration agreement was unenforceable as a contract of adhesion "meritless" for two

16   reasons.  First, because it had "never applied the adhesion contract doctrine to employment cases" and

17   second, because in Nevada, parties to a written arbitration agreement are bound by its conditions

18   regardless of their subjective beliefs at the time the agreement was executed.  *Id* (internal citations and

19   quotations omitted).

20   Defendant acknowledges that the California courts consider employment agreements contracts

21   of adhesion.  *Armendariz* at 690.  Defendant cites *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App.

22   4th 708, 722 (2003), for the proposition that describing the contract as a contract of adhesion does not

23   affect its enforceability.  The Defendant also relies on California authority holding that a mandatory

24   arbitration agreement provided as a condition of employment "is an indicia of only a low degree of

25   procedural unconscionability under California law."  *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th, 975,

26   981 (2002).

27   In this respect, California law is more favorable to the employee.  Under California law,

28   mandatory arbitration agreements in employment contracts must have some "modicum of bilaterality"

14

or they are deemed substantively unconscionable.  *Amendariz* at 692**.**  Under California law, an arbitration agreement requiring arbitration of unwaiveable statutory rights is enforceable if it meets five criteria: (1) a neutral arbitrator; (2) adequate discovery; (3) all applicable statutory remedies which would be available in court; (4) a written arbitration award that permits limited judicial review; and (5) limits on arbitration costs and fees chargeable to the employee.  *Id*,, at 682.

Plaintiff's substantive unconscionability arguments are all based on public policy arguments that an arbitration agreement which purports to waive collective action rights is void and unenforceable under both Nevada and federal law.   For the reasons explained below, the court finds that the arbitration agreement is not substantively unconscionable or void and unenforceable because it waives collective action rights.

Plaintiff does not dispute that the arbitration agreement covers the claims raised in this lawsuit.  The court finds that Plaintiff has not met his burden of establishing that the arbitration provision in the acknowledgment form the Plaintiff signed is both procedurally and substantively unconscionable.  The arbitration clause and its effects are readily ascertainable by reviewing the acknowledgment form.  Additionally, the agreement is bilateral and its terms are not one-sided in favor of the employer.  Under both Nevada and California law, continued employment after an employment agreement has been modified is adequate consideration.  The class action waiver is contained in bold and capital letters, and clearly advises the employee the arbitration agreement precludes representative actions, class actions, or actions brought as a private attorney general or in any other representative capacity in the arbitration.

As indicated, Nevada does not recognize an employment contract as a contract of adhesion, or apply the doctrine of adhesion to employment contracts.  Under California law, an employment contract is a contract of adhesion because of the employees' lack of bargaining power which is a factor that weighs in favor of a finding of procedural unconscionability.  However, this factor is insufficient, in and of itself, to render the arbitration agreement procedurally unconscionable. The agreement adopts the employment dispute resolution rules in effect with JAMS which contain a number of procedural protections including the appointment of a neutral arbitrator.  It also authorizes discovery and gives the arbitrator authority to grant any legal or equitable remedy deemed appropriate and allowed by law.  The JAMS rules require a written arbitration award with a statement of reasons for the award which states

1    essential findings and conclusions on which the award is based and requires the employer to pay all

2    costs of the arbitration except for the initial case management fee.  By incorporating the JAMS rules,

3    the arbitration clause complies with the more stringent requirements of California law that recognize

4    employment contracts as contracts of adhesion.

5         In summary, the court finds Plaintiff has not met his burden of establishing that the arbitration

6    agreement is both procedurally and substantively conscionable and therefore unenforceable under either

7    California or Nevada law.

8         **F.    Collective Action Waivers in Arbitration Agreements.**

9         The Savings Clause of the FAA requires courts to enforce arbitration agreements according to

10   their terms unless a "contrary congressional command" in another statute overrides the "liberal federal

11   policy favoring arbitration agreements." *CompuCredit Corp v. Greenwood,* 565 U.S. ___ 132 S.Ct.

12   665, 669 (2012).  Congressional intent to override the FAA, if it exists, will be found in the text of the

13   statute, it's legislative history, or because of an inherent conflict between arbitration and the statute's

14   underlying purposes.  *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 26 (1991).  The burden is

15   on the party challenging the arbitration agreement to show that Congress intended to preclude a waiver

16   of the judicial forum.  *Id.*

17        Plaintiff argues that the FLSA, NLRA, and Norris-LaGuardia Act all create a substantive right

18   to bring collective actions and establish congressional intent to override the FAA.  That is, Plaintiff

19   argues that all three statutes create non-waiveable rights to pursue collective actions notwithstanding a

20   provision in an arbitration agreement which requires an arbitral forum rather than a judicial forum on an

21   individual, rather than a collective, basis.  Plaintiff bases these arguments primarily on the NLRB's

22   decision in *D.R. Horton*, 357 N.L.R.B. #184, 2012 WL 36274 (Jan. 3, 2012).

23        In a case decided after oral argument in this case, the Ninth Circuit addressed the NLRB's *D.R.*

24   *Horton* decision in *Richards v. Ernst & Young*, __ F.3d __ 2013 WL 4437601 (9th Cir. Aug. 21, 2013).

25   There, the Ninth Circuit reversed the district judge's denial of the employer's motion to compel

26   arbitration of state wage and hour claims asserted by a former employee.  On appeal, the employee

27   urged the Ninth Circuit to adhere to the NLRB's decision in *D.R. Horton*.  The Court of Appeals

28   declined to do so because the issue was raised for the first time on appeal.  However, in the decision the

court noted "that the only court of appeals, and the overwhelming majority of district courts, to have considered the issue have determined that they should not defer to the NLRB's decision in *D.R. Horton* because it conflicts with the explicit pronouncements of the Supreme Court concerning the policies undergirding the Federal Arbitration Act ("FAA"). *Id.*, at *2, citing *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013); *Delock v. Securitas Sec. Servs. USA, Inc.,* 883 F.Supp 2d 784, 789 (E.D. Ark. 2012); *Morvant v. P.F. Chang's China Bistro, Inc.,* 870 F.Supp 2d 831, 745 (N.D. Cal. 2012); *Jasso v. Money Mart Express, Inc.*, 879 F.Supp 2d 1038, 1049 (N.D. Cal. 2012); *La Voice v. U.B.S. Financial Servs, Inc.*, No. 11 civ. 2308 (BSJ)(JLC) 2002 WL 124590 at *6 (S.D.N.Y. January 13, 2012).

In *Ernst & Young*, the Ninth Circuit acknowledged that there were two out-of-circuit district court decisions deferring to the NLRB's decision in *D.R. Horton*. *See Brown v. City Corp. Credit Servs.*, No. 1:12-cv-00062-BLW, 213 WL 645942 at *3 (D. Idaho February 21, 2013); and *Herrington v. Waterstone Mortg. Corp.,* No. 11-cv-00779-bbc. 2012 WL 1242318 at *6 (W.D. Wis. March 16, 2012). However, the court recognized that pursuant to the Supreme Court's decision in *Italian Colors*, courts must rigorously enforce arbitration agreements according to their terms, including claims that allege a violation of a federal statute,  unless the FAA's mandate has been overridden by a contrary congressional command. *Id* (internal quotations and citations omitted). Citing *Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F.Supp 2d 831, 845 (N.D. Cal. 2012), the Ninth Circuit found that Congress had not expressly overridden any provision of the FAA when it enacted the NLRA or the Norris-LaGuardia Act.

All of the courts of appeals that have considered whether the FLSA establishes a congressional intent to bar employees from agreeing to arbitrate FLSA claims individually have concluded that arbitration agreements containing class waivers are enforceable in FLSA cases. *Adkins v. Labor Ready, Inc.,* 303 F.3d 496, 503 (4th Cir. 2002); *Carter v. Countrywide Credit Indus. Inc.,* 362 F.3d 294, 298 (5th Cir. 2004); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1052 (8th Cir. 2013); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319-20 (9th Cir. 1996) (finding no evidence that Congress intended to preclude

/ / /

/ / /

17

1  arbitration of FLSA claims in the text or legislative history of the statute);[1] *Caley v. Gulf Stream*
2  *Aerospace Corp.,* 428 F.3d 1359, 1378 (11th Cir. 2005).

3  Plaintiff also relies heavily on the Supreme Court's decision in *Gilmer* to support his arguments
4  that an arbitration agreement that contains a collective action waiver is unenforceable.  There, the
5  Supreme Court accepted certiori to decide whether a claim under the Age Discrimination and
6  Employment Act of 1967 ("ADEA") could be subject to compulsory arbitration pursuant to an
7  arbitration agreement in a securities registration application.  It concluded ADEA claims could be
8  subject to compulsory arbitration.  In *Adkins*, the Fourth Circuit rejected the argument Plaintiff makes
9  here that the purposes and structure of the FLSA conflict with the FAA's pro arbitration policy.  The
10  decision recognized that the FLSA's remedial purposes and enforcement scheme are very similar to the
11  ADEA which the Supreme Court concluded in *Gilmer* does not preempt the FAA.  *Adkins*, 303 F.3d at
12  506.  Additionally, it found that "the ADEA actually incorporates large sections of the FLSA's
13  enforcement structure by reference."  *Id.*, citing 29 U.S.C. § 626(b).  Because the Supreme Court had
14  already held that the FAA is compatible with the ADEA in *Gilmer*, the Fourth Circuit rejected the
15  employee's "structural argument that there is an inherent conflict between the FAA and the FLSA." *Id.*

16  In *Carter*, the Fifth Circuit found that there is nothing in the FLSA's text or legislative history
17  supporting the employees' argument that the FLSA explicitly precluded arbitration.  362 F.3d at 297.
18  *Carter* also rejected the employees' argument that an inability to proceed with a collective action
19  deprived the employees of substantive rights under the FLSA.  Relying on *Gilmer*, the Fifth Circuit
20  noted that the ADEA also allows for class action suits and that the ADEA expressly adopted the FLSA
21  class action provision.  It therefore held that *Gilmer* applied with equal force to waivers of FLSA
22  collective actions claims.  *Id.*, at 298.

23  In *Owen*, the Eighth Circuit held "there is no inconsistency between either the FLSA text or its
24  legislative history, and the conclusion that arbitration agreements containing class waivers are
25  enforceable in cases involving the FLSA."  702 F.3d at 1053.  The Eighth Circuit also rejected

26

27  _____

28  [1]*See* also *Horenstein v. Mortgage Marketing, Inc.*, 9 Fed. Appx. 618, 619 (9th Cir. 2001)
(unpublished)

18

arguments Plaintiff makes here that the NLRA and Norris-LaGuardia Act indicate a congressional command to override the FAA.  Citing *Gilmer*, the Eighth Circuit noted that the FAA was originally enacted in 1925, and re-enacted in 1947.  *Id*.  This was nine years after the passage of the FLSA in 1938,  twelve years after the passage of the NLRA, and fifteen years after the passage of the Norris-LaGuardia Act.  The Eighth Circuit found that Congress' decision to re-enact the FAA "suggests that Congress intended its arbitration protections to remain intact even in light of the earlier passage of three major labor regulation statutes."  *Id*.,

The Ninth Circuit's decision in *Kuehner* also relied on the Supreme Court's decision in *Gilmer* and *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 230, 236 (1987), in holding that the employee had not met her burden of identifying anything in the text or legislative history of the FLSA indicating that Congress intended to prohibit arbitration of FLSA claims.  The Ninth Circuit read these two Supreme Court decisions as holding "that despite the FAA contracts to arbitrate statutory claims are unenforceable if Congress intended to preclude a waiver of the plaintiff's right to a judicial forum." 84 F.3d at 319.  However, the court noted that "the Supreme Court has seldom found congressional intent to preclude such a waiver, and has enforced contracts to arbitrate claims under the Sherman Act, the Racketeer Influenced and Corrupt Organizations Act, the Securities Exchange Act of 1934, and the Age Discrimination in Employment Act.  *Id.*

Finally, in *Caley*, the Eleventh Circuit rejected the employee's arguments that an arbitration agreement was unconscionable, and therefore unenforceable, because it precluded class actions.  In *Caley*, a group of employees brought class claims against the corporate employer under the FLSA, ADEA, and the Employee Retirement Income Security Act.  The employees argued that the arbitration agreement was unconscionable because it precluded class actions and because it limited discovery. Citing *Gilmer*, the Eleventh Circuit disagreed because a "prohibition of class actions and discovery limitations are consistent with the goals of 'simplicity, informality, and expedition' touted by the Supreme Court in *Gilmer*."  428 F.3d at 1378.

In short, the overwhelming weight of authority supports Defendant's position that an arbitration agreement containing a collective action waiver of FLSA claims is valid and enforceable under the FAA.

**G.     Forum Selection.**

The parties' arbitration agreement requires that arbitration be conducted in Orange County, California.  Plaintiff's opposition to the motion to compel arbitration does not address the forum selection provision of the parties' arbitration agreement.  Defendant cites *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) for the proposition that under federal law, a forum-selection clause is *prima facie* valid and enforceable absent a strong showing by the party opposing the clause that enforcement would be unreasonable or unjust, or that the clause is invalid.  The holding in *Manetti-Farrow* applied to forum selection clauses in in diversity suits, and is therefore, not directly on point.  This is a federal question case in which the court is exercising supplemental jurisdiction over related state wage-and-hour and retaliation claims.  However, although Plaintiff opposes the motion to compel on other grounds, he does not claim that requiring him to arbitrate in Orange County, California would be fundamentally unfair.  The court will therefore grant Defendant's request that the arbitration proceed in Orange County, California as the parties' arbitration agreement provides.

**H.     Stay or Dismissal**.

Plaintiff's opposition also did not address Defendant's arguments that this case should be dismissed, or in the alternative, stayed pending arbitration.  During oral argument, counsel for Plaintiff indicated that if the court was inclined to grant the motion to compel arbitration, Plaintiff would prefer that the case be dismissed.  If the court finds that the parties have an enforceable arbitration agreement, the court has the authority under 9 U.S.C. § 3 to grant a stay pending arbitration, or to dismiss.  *Martin Marietta Aluminum, Inc. v. General Electric, Co.,* 586 F.2d 143, 147-48; *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635. 638 (9th Cir. 1988).  Where, as here, all of Plaintiff's claims must be arbitrated, and Plaintiff would prefer dismissal to a stay, the court will grant Defendant's request to dismiss this action.

**III.     Conclusion.**

Under the FAA courts are required to rigorously enforce arbitration agreements according to their terms unless Congress has mandated otherwise in another federal statute. The parties have a valid and enforceable arbitration agreement which requires arbitration of the claims asserted in this lawsuit. The arbitration agreement is not unconscionable under either California or Nevada law.  Plaintiff has

1    not met his burden of establishing that in enacting the FLSA, the NLRA or the Norris-LaGuardia Act

2    Congress intended to preclude individual arbitration of his FLSA claims.  The ADEA has the same

3    broad remedial purposes as the FLSA, allows collective actions and actually incorporates large portions

4    of the FLSA's enforcement structure by reference.  In *Gilmore* , the Supreme Court held that ADEA

5    claims could be subject to compulsory arbitration, and that nothing in the text, legislative history or

6    underlying purposes of the ADEA evidences congressional intent to preclude enforcement of arbitration

7    agreements.  All of the courts of appeals to have considered the matter have held that nothing in the text

8    or legislative history of the FLSA indicates congressional intent precluding arbitration of FLSA claims

9    individually.  Similarly, the courts of appeals have held that there is no "inherent conflict" between the

10   FLSA and FAA and that arbitration agreements containing collective action waivers of FLSA claims

11   are enforceable.

12          The parties' forum selection clause requires arbitration in Orange County, California.  In oral

13   argument counsel for Plaintiff indicated that if the court granted the motion to compel arbitration

14   Plaintiff would prefer dismissal to a stay.  The court will therefore exercise its discretion to dismiss

15   rather than stay while the parties arbitrate their disputes.

16          For the reasons stated,

17          **IT IS ORDERED** that:

18          1.      Defendant CashCall's Motion to Compel Arbitration and Dismiss (Dkt. #6) is

19                  **GRANTED**.

20          2.      Plaintiff's Motion to Use Exhibits (Dkt. #40) is **DENIED as moot** as counsel did not

21                  raise the issue at oral argument.

22          2.      The parties shall immediately meet and confer to make the arrangements to schedule an

23                  arbitration in Orange County, California in accordance with the provisions of the

24                  arbitration agreement and the employment dispute resolution rules currently in effect

25                  with JAMS as expeditiously as possible.

26   / / /

27   / / /

28   / / /

21

3.      This action is **DISMISSED**, and the clerk of the court shall enter judgment in favor of

the Defendant accordingly.

Dated this 7th day of January, 2014.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE